My name is Charles Powell from the Melvinian Myers, and we represent the petitioner in this case, Mr. Jorge Velasco. We request to reserve three minutes for rebuttal. Okay, what's your clock? Thank you, Your Honor. We believe that the petition should be granted for the following two main reasons. Number one, in 1988, the government failed to afford petitioner his one day in court, his quote, when they deported him in absentia without first properly notifying him, excuse me, by certified mail. Let's get the record straight on that first, if you will, please, because I have some problems with your position. Maybe I'm misunderstanding it. In your brief at page eight, you indicated at the bottom of page eight that during the time that he was charged and incarcerated in Los Angeles County, neither Velasco or his family received any correspondence from the INS concerning the 1988 order to so-call Texas and subsequent deportation hearing. You referenced AR-14. AR-14 states Velasco never received any letter from the immigration court notifying him of the time and place of the deportation hearing. Yes, Your Honor. Just hang on a second. The government says on page 20 of their brief that Mr. Velasco maintains he did not receive notice. However, in absentia deportation order states the respondent was properly notified of the time and place of deportation hearing by letter mailed to the address or record provided by the respondent. Mr. Velasco conceded that he provided his home address to the border patrol agents who arrested him. He does not claim that he advised either the INS or the immigration court of a change in address and his incarceration. On page 28 of the government's brief, footnote 18, they say, since the 1988 deportation proceeding was conducted by the immigration court in El Paso, Texas, the recorded proceeding does not include the file material from Texas. However, petitioner does not deny that the notice of hearing was received at the address he provided. He denies receiving notice while he was in prison serving a state sentence. Now, here's my question after that long dissertation. I'm sorry about that. We've had a lot of cases on mailing and presumption of receipt of mail. Normally what happens, someone says, I gave my address as 342 Jones Street. I live at 342 Jones Street. I'm there every day. I go out to the mailbox and get it every day and never got it. This is a flat-up issue of fact, and so then comes in the receipts and all that stuff. All you're doing is prima facie challenging a finding of the court that there was proper notice mailed, and yet there's no denial that it was ever received there. All he said, I'm in jail. I didn't receive it. How have you carried your proof that he had a lack of due process when the record seems to be that it was properly mailed? No, actually, the BIA, well, I'm not sure. First, the BIA noted that he denied receiving it, and in his own pro se brief to the BIA, he says that he didn't receive it or that he denies that it ever received at his house where he was at, too. And the second thing I would like to – Well, all we have in the – are you saying that what you said in your brief is incomplete? Where is the further evidence that says that he's challenged the fact that it was never received at the place, at the address that he gave the INS to send the notice? Because when he was picked up in Texas, he was told the notice will be sent, and you will have a deportation hearing it relative to that notice being sent to that address. Right. Well, in his pro se brief, he denies ever receiving it and that it was received at his house. But regardless of that – Are you saying he specifically says that in his brief? I don't have the brief in front of me. Okay, that's all right. We'll check it out. But regardless of that, the recent case of Salta v. INS 314F3D1076, they specifically remand to the BIA for an evidentiary hearing because that guy, Salta, denied that he had ever received notice under the even more lenient statute after the IRA in 1997 where the standard is just letter, not certified letter. Mr. Powell, I would take as a given that he didn't receive it. Okay. Because he's in prison. Well, not only that he didn't receive it, Judge Silverman, but that it was never mailed. There's no evidence. Well, how does he know whether it was mailed or not? There's no evidence in the record. No, there is. Didn't the immigration judge make a finding that he was properly notified of the time and place by letter to the address of record? Actually, what the immigration judge stated at AR 1537 was the respondent was properly notified of the time and place of the deportation hearing by letter. The standard at the time, both parties agreed, was certified letter. Yes, but the first part of that sentence is the respondent was properly notified. Our response to that would be that's a legal conclusion and legal conclusions are reviewed de novo and there's no evidence in the record. Assume this. Assume a letter was sent. If the judge made a finding that that constituted proper notice when the standard was certified mail, then that would be an incorrect legal conclusion. You think it's a legal conclusion that a certified letter was mailed? No. It's a factual finding whether a letter was mailed. It's a legal conclusion whether that constitutes proper notice. If the standard at the time is certified mail and the judge finds that that's proper notice, that's a legal error. In other words, he's finding a factual finding that the letter was mailed, a letter. The legal standard is certified mail. He's saying that constitutes proper notice. Well, that's incorrect. Certified mail is a standard. The only challenge that he can make is I'm in jail. I didn't see it. He has not proffered any evidence under oath or otherwise that there's any doubt about that finding. So you can challenge anything just by saying off the top of your head I'm in jail so it didn't happen. That means that you're saying that the judge either is lying or fabricated the evidence or, as you said, it's an error of law. Your Honor, our position is that assuming you accept that the judge made a factual finding that a, quote, letter was sent, there is a do we agree that there's a difference between a certified letter and a letter? Even in 1997, Salta remands for that exact reason where the Petitioner denies, not under oath, just in his brief, that he received notice and this Court finds that Well, I would have to read the case. Is that his only allegation or does he say I'm sitting home, I get the mail every day, everybody gets the mail? Denying that you just received it and you're sitting in Thailand doesn't do anything for you. He's sitting in jail and he says I deny to receive it. Does he say that specifically someone's at the house and nobody ever received it? I'm not positive whether he says that. That's important. That's extremely important. I think that's when Salta would come into effect where you can remand it for an evidentiary hearing. Moreover, in Enri Grillo-Halva, the BIA decision that was cited by Rita, the first step is the government comes, they have a receipt that they sent the letter, they have a return receipt either not claimed, and then the presumption is proper delivery and then the Petitioner can come back. What evidence was put into challenge at the force of the hearing? What are the facts of that case? That's the whole point. What is the facts of the case that brought the hearing to bear to force the production of the receipts? The person challenged whether it was required that the person sign the return receipt. In that case, he says that if it wasn't signed, if it was just returned not delivered, then that would have been enough to constitute no notice. But the government came forward and said here, here's the receipt. They challenged the receipt. But in this case, he just says I didn't receive it or nobody did. I understand what you're saying. I'll review those cases again. Okay. And to – okay. I would like to turn for one minute to the Catt claim that in 2001, the IJ misapplying law might require widespread torture exists in El Salvador rather than this circuit's well-established standard that it's more likely than not that Petitioner would be tortured upon. Didn't the BIA apply the right standard then? No. The BIA did the same thing as the IJ. But regardless of what the BIA did, it didn't perform a de novo review of the IJ decision. Rather, it just basically rubber-stamped what the IJ did. Nowhere did it state that it was performing a de novo review. Nowhere did it state that it was reviewing new evidence. In fact, this is just like the Appendix Prado, the case cited in the briefs, where it says nowhere did the BIA state that it was subjecting the IJ's decision to de novo review, that it was conducting its own examination of the record, or more important, that it was exercising discretion independently. There, this Court found that it had to review the IJ, not the BIA decision. I would like to reserve the last minute for a rebuttal, if I may. All right. Thank you. You may proceed. Good morning, Your Honor. May it please the Court. Dan Goldman on behalf of the Respondent. This Court should uphold the decision of the Board of Immigration Appeals and dispense the petition for review. Petitioner argues in his brief that the shortcuts frequently turn out to be mistakes. Now, Petitioner may have been talking about the reinstatement process, but in fact, that same standard could be applied to Petitioner's own conduct. Petitioner took shortcuts. He reentered the country illegally, rather than going through the available administrative remedies, and that's what put him in the position that he's in today. When he reentered illegally, the government took advantage of the law as it existed. The government reinstated the removal order, and that brings us to the position that we're in today. The government, or rather, Petitioner argues that he never received the notice. The notice was sent. It was sent to the address that Petitioner provided, and that satisfied him. What's the proof? The proof is, Your Honor, in the decision of the immigration judge back in 1988, as was noted earlier, that the immigration judge specifically says the notice was sent, it was properly sent to the address that was provided. And that's the only proof we have? Because this is a reinstatement record, Your Honor, that is the only proof that's in the record. We also have the presumption of regularity. There's been no suggestion that the address that was provided by the Petitioner, when he was told, This is where you're going to get a notice. Where do you want it to go? He could have been taken into custody that night. They didn't do that. They said, We're going to give you an order to show cause and notice to appear. Where do you want it sent? He gave his mother's address. Subsequent to that, he was taken into custody. He never notified the IMS that he had a new address. He chose to leave it on file as the record address, the official address that the Petitioner provided. With the presumption of regularity, with the finding of the immigration judge, this Court should find that the notice was properly sent. How far does he have to go to challenge that? In our prior cases, there have been cases where the allegation was it was sent by certified mail. The Respondent, the Petitioner says, Well, I'm home every day. I go to the mailbox every day. I've never received it. So then they're forced to approve. Here, the reference from the Petitioner's brief is that he never received it and he was in jail. Counsel says that his pro se brief says he also says that his family never received it, whatever that means. What's your understanding of his challenge along those lines and what particular facts did he allege, if any? The government's understanding is that he's sort of saying, Well, I never got it, but even if I did, I was incarcerated, so it doesn't count. I understand that. I'm talking about if we're going to presume regularity from that statement and a presumption, then what are the best facts you can find that he has alleged to challenge that presumption? The best facts that maybe I'm misunderstanding your question, Your Honor. Well, he's got to say something other than I don't believe you. Essentially, that's what he's saying, Your Honor. When the immigration judge's decision says specifically the Respondent was properly notified of the time and place of the deportation hearing by letter to the address of record provided by the Respondent. Now, there's some talk about whether it was sent certified mail, not certified mail. When the immigration judge makes a specific finding that the Respondent, the Petitioner, was properly notified, that should carry the day. That, in addition to the presumption of regularity, and there's no suggestion that he has to go forward then with more evidence or more proof that that particular finding is incorrect legally or factually. Yes, Your Honor. Did he come forward with anybody who was living at the house? Was it his mother's house? Yes. Did the mother file a declaration or anything that says I was at the house and I never saw such a letter? I don't recall anything to that effect, Your Honor. I mean, whether the mother's going to say that, it's the Petitioner's position. What I understood Mr. Pell to say was that Mr. Velasco essentially says no one at the house got it. That's right. But that would be hearsay, I suppose. I'm wondering if there's anybody who was at the house who would say I was at the house and did he come forward with anything like that? Your Honor, I don't recall that. I'd have to go back and check. Let me ask you another question. Let's assume just for the sake of discussion that the notice was not proper, okay, just for the sake of argument. We then still have a sort of a harmless error problem, too, don't we? Yes, we do. Would you discuss that? Your Honor, in this case, there were a lot of options that were available to Mr. Velasco. Mr. Velasco was, and I think both sides would agree, he was incarcerated at the time of his hearing. He says he never got the notice. What were his options? Number one, his option was to file a motion to reopen. He could have done that after the deportation hearing. He could have done it while he was still in custody. He says he never found out about it. That's what he says, Your Honor. At some level, though, that statement just doesn't hold water for a couple of reasons. Okay. Well, let's assume that he didn't know about it. You still have the question of whether he would have been entitled to, what, 212H relief? Yes, Your Honor. Can you talk about that? There's no – there's no – what the Petitioner seems to be suggesting in the briefs is that all that the Petitioner has to do is be able to say, I would have been eligible to apply for some relief. And that's a substantial lowering of the standard. The standard is that the Petitioner would have to show some prejudice. He's not shown where that prejudice is. He would not have been eligible for a waiver of inadmissibility because of his criminal convictions, because of his multiple illegal reentries. And in addition, his entire Convention Against Torture claim, all of the facts that allegedly lead to that claim were subsequent to the original deportation order. So that should not even be in play when considering that particular issue. To be entitled to – excuse me. To be entitled to 212H relief, he would have to show, what, that he has a U.S. citizen relative? That's a part of it, yes, Your Honor. And that it would be hardship to the relative? Yes, Your Honor. Did he come forward with anything to establish what his relationship is with the mother? I don't believe there's any evidence to that effect, Your Honor. But before this Court even gets to that, the question of whether or not Mr. Velasco had any idea that there were deportation proceedings is one that – it just strains credibility to suggest that he had no idea that there was anything going on for a couple of reasons. Number one, when he was stopped by the Border Patrol, they're told, you're going to get a notice. Now, for him to believe – for him to suggest credibly that he had no idea about deportation proceedings, well, he's already said, he's acknowledged. He was stopped. He provided an address because he was told, this is where we're going to send you a notice to appear. Beyond that, when he's sitting in custody in California, the one thing that most inmates know is when they're getting out of jail. And, you know, you could ask an inmate who's getting out in two years, two months, ten years. They know their release date. Mr. Velasco's release date came and went, and he was not released. He was taken into custody by the INS. Something should have triggered a question in his mind. Why am I going into custody with the INS? I was supposed to get released. I was supposed to walk out of jail and go home to California to my mother's address, presumably. Well, further than that, he already received a notice when he was picked up in Texas that he would be notified and that he was going to be deported. So it's no mystery to him what was going on with the INS, I suppose. Apparently not, Your Honor. And in his brief to the Board of Immigration Appeals, he says that he provided that address. Yes. So there's no question. But when he is taken from State custody to INS custody, what he's saying is that triggered nothing in my mind that there was a deportation proceeding. That for some reason, unbeknownst to him, that he never asked, no one ever said to him, no one ever gave him any paperwork. And he never asked, why am I not a free man? How long after he was taken into custody did he file a petition to reopen? The motion to reopen was not filed for several years, Your Honor. I could check the exact date, but I think that came in much, much later in Texas, and it was ultimately denied. But that's the problem with the petitioner's argument, is to say, I had no idea, is saying, well, when the uniforms of the guards changed and when all the inmates went from being other criminals in California to everyone being an illegal immigrant, I had no idea that there was something going on with immigration connections. And therefore, I had no idea. And that's the opportunity that Mr. Velasco had to move to reopen his case. And he was sitting in INS custody for, I believe, over six weeks, close to six weeks, never moved to reopen his case. Once he's deported, that motion to reopen option goes away. He can still apply for a waiver of indivisibility. He started that procedure. It was taking him too long. He decided to take the shortcut, to take the option of self-help, which is to illegally reenter the country. That's simply not an option that's available to him. Well, I have a note that says that his mother is a naturalized U.S. citizen. Yes, Your Honor. Assuming that to be true, does that give him a plausible ground for 212H relief? No, he doesn't have to show that he would actually get it. He has to show he has a plausible ground to apply. Yes, Your Honor. Your Honor, I would have to check. I don't recall when she naturalized. And I'd have to check all the available records. I'd also have to show it would be a hardship to her, too. Yes, Your Honor. Before I answer that question, I just want to make sure I'm clear. The record doesn't show whether he's close to his mother, estranged from his mother, or anything in between? I don't recall any testimony of that effect, Your Honor. If it's in the 1,595 pages of the record, I'm sure it's pliable. Your Honor, I see my time is expiring. Subject to the Court's questions, the government would ask that the Court dismiss the petition for review for all the reasons discussed. All right. Thank you. Thank you, Your Honor. Your Honors, let me just address one more time Salta to answer the question about what a petitioner needs to do to come forward with. In Salta, all that the petitioner did was file a motion for reopening asserting only in her pleading. And the issue was, well, why didn't she have a sworn affidavit? She did not have a sworn affidavit there. And let me quote it quickly. We remanded the BIA with instructions to remand to the IJ to allow both Salta and the INS to supplement the record and to conduct an evidentiary hearing to determine whether Salta should be permitted to reopen her application based on the lack of notice. So I think Salta ---- Well, you still haven't answered my question. What are the underlying facts that produce that result? I mean, you just can't say, I demand a hearing. That just doesn't work. There's got to be some underlying facts of why he thinks that there was a problem with his notice. You still haven't told me that. I'll have to read Salta. Okay. And lastly, about prejudice, he was eligible for the ---- My time's expired. Go ahead. He was eligible for 244A suspension of deportation relief under the statute at the time, 1254A, which just required the extreme hardship. And at that time, it was just to himself, not to the spouse. They amended it afterwards in the 1990 Act. So he ---- and he even meets it to prejudice to a child because he had a natural-born citizen child at that time who was 2 years old. So there would be enough to set that. But the standard is just a plausible ground for relief, which I think was available at that time. And unless there's other questions, I'll ---- I want to make sure you and I are on the same page on the case. You're quoting Salta? Salta. Salta. Sir, it is 314F3D1076. And the petitioner there ---- That wasn't in your opening brief, was it? It's in my reply brief. Oh, it's in the reply brief. Okay. Thank you. All right. Thank you. Thank you.
judges: Brunetti, Tg Nelson, Silverman